AUGUST C. ERFORT, Respondent, *v.* JOHN L. CONSALUS, Appellant.

1. *Conveyances, fraudulent — Evidence — Res gestæ — Sheriff's deed — Allegata and probata — Variance.* — A. bargained certain premises to B., who took A.'s bond for a deed and went into possession. Afterward B. sold out to C. a large amount of merchandise, being his whole stock in trade, and shortly afterward, at the time of consummating the bargain, also quit-claimed to him the premises. Subsequently the creditors of B. levied on the premises and sold them under execution. The purchaser at the sheriff's sale brought suit against C. to set aside B.'s quit-claim as fraudulent, and to vest title in plaintiff. *Held:*

1. That testimony touching the sale of the merchandise was admissible as part of the *res gestœ*.

2. That although the petition set out the judgment and execution under which the sale was made as being against B., whereas the deed described them as against B. and two others, there was not sufficient variance between the deed and the description of it in the petition to prevent its being read in evidence.

3. That A. had no interest in the suit, and the omission of him as a party was no ground for arresting the judgment.

### *Appeal from First District Court.*

*Crandall & Sinnet,* for appellant, urged, among other points, that the motion in arrest should have been sustained because there was a defect in parties; that George R. Smith held the legal title to the lot in controversy, and should have been made a party defendant. (Sto. Eq. Pl. 72; Bartlett v. Glascock *et al.,* 4 Mo. 62; Burke v. Flourney *et al.,* 4 Mo. 116; *id.* 364; Whelan v. Whelan, 3 Cow. 580.)

*Johnson & Budd,* for appellant.

I. The petition was defective in not alleging that Gage held the bond from Smith at the time he made the quit-claim deed to Consalus. Had he assigned the bond, then his quit-claim deed would have carried no interest in the land, and this suit would have no foundation.

II. Smith held the legal title to the lot in controversy, and should have been made a party defendant.

III. Proof of fraud in the sale of goods by Gage & Co. to defendant on one day is not competent to establish fraud in the sale of real estate by Gage to defendant on another day. (Gutzweiler v. Lackmann *et al.,* 39 Mo. 91; Mower v. Hanford, 6 Minn. 535; Wilmot v. Richardson, 6 Duer, 328; Huntzinger v. Harper, 44 Penn. St. 204; Staples v. Smith, 48 Me. 470; Durbrow v. McDonald, 5 Bosw. 130.)

IV. The petition describes the title, judgment and execution as being against Gage, while the deed offered in evidence and admitted against defendant's objection describes the judgment and execution as being against Gage and two other parties. This

14—VOL. XLVII.

was a fatal variance. (Deickman v. McCormick, 24 Mo. 596; Bank of Commerce v. Mudd, 32 Mo. 218; Boyden v. Hastings, 17 Pick. 200; Shelby v. Manderville, 7 Cranch, 208; 1 Greenl. Ev., § 69; Wagn. Stat. 1033, § 1, note.)

*Phillips* and *Vest*, for defendant in error.

I. The sheriff's deed was properly admitted in evidence. (27 Mo. 28; 4 Johns. Ch. 437; Gould's Pl., ch. 3, § 174; Bell v. Scott, 3 Mo. 212; 10 Mo. 395.) The objection to the admission to the deed in evidence is too general. (33 Mo. 230; 23 Mo. 438–42; 25 Mo. 41; 41 Mo. 260.)

II. The evidence relative to the fraudulent transfer of the stock of goods was competent, relevant and pointed. The sale of the goods and lot were concurrent acts, parts and parcels of one and the same dishonest scheme, so involved and interwoven as to explain the one the other, and to render their separation in the introduction of evidence almost physically impossible. (27 Mo. 272; 42 Mo. 138, 142; 11 Mo. 410; 11 Wend. 83–4; 12 Wend. 300; Cary v. Hotailing, 1 Hill, 311, 316.)

III. Smith was not a necessary party to the suit. The petition would have been multifarious had he been joined as co-defendant. (20 Mo. 72; 29 Mo. 28; 4 How. Pr. 48; 11 How. Pr. 242; 4 Mo. 116; 10 Mo. 174.) It is too late to object, for want of all necessary parties, after verdict.

It was neither necessary to allege or prove the assignment of the title bond by Gage to Consalus. The making and delivery of the quit-claim deed by Gage to Consalus was in itself an assignment of the title bond. If such assignment had taken place, why did he not plead it and prove it? It was a matter peculiarly within his knowledge. (37 Cal. 518; 4 Cal. 272; 26 Mo. 364; 34 Mo. 129; 2 Sto. Eq., § 1050; Will. Real Estate, etc., 375.) In truth, the title bond itself was in evidence, a part of the petition and shows no assignment to a third party.

-- The petition alleges, and the answer does not deny, that Gage was in possession of the lot under the title bond up to the date of the quit-claim deed. The quit-claim deed itself shows that it was duly acknowledged and put to record on the day it was made.

What, then, would become of the claim of an assignee of the title bond against the grantee in said deed? What would it avail?

CURRIER, Judge, delivered the opinion of the court.

It appears that George R. Smith, in July, 1865, bargained to one Joseph S. Gage a certain lot of ground in Sedalia for the sum of $1,500. Four hundred dollars of the purchase money was paid down, and the balance was agreed to be paid in two equal payments, at six and twelve months. Gage took Smith's bond for a deed and went into possession. In January, 1866, Gage quit-claimed all his right and interest in the premises to the defendant. Subsequently Gage's creditors levied on the property, and Gage's interest therein was sold on execution and bought in by the plaintiff. Thus far there is no dispute about the facts. This suit is brought to set aside Gage's quit-claim as fraudulent and void as respects his creditors, and to vest the title thereby assumed to be conveyed in the plaintiff.

The petition charges that Gage and the defendant entered into a fraudulent combination and conspiracy to cheat and defraud the former's creditors; that in pursuance of such combination the premises in question were conveyed to the defendant voluntarily and without consideration, and in fraud of the rights of Gage's creditors.

That Gage's conduct was thoroughly fraudulent does not seem to be a disputed proposition. The main issue of fact in contest related to the defendant's alleged participation in the fraud. At the trial the court framed a special issue covering the question of fraud, which was submitted to a jury and found for the plaintiff. Upon the trial of that issue various questions arose in respect to the admissibility of testimony.

It appeared that Gage commenced a merchandise business in Sedalia in the summer of 1865, associating with himself two other parties. The business was actively prosecuted down to the middle of the following January, when Gage & Co. made a sweeping sale of all their merchandise to the defendant, leaving their creditors wholly unprovided for. At or about the same time Gage conveyed the storehouse and lot in question to the defend-

ant, reciting in the conveyance a consideration of $3,500. There was evidence tending to show that the defendant first bought the goods in the store, and that he then, on the following day, or within a day or two, took the conveyance of the storehouse and lot. The defendant seeks to disconnect the two transactions, so as to exclude in this investigation all evidence relating to the sale of the goods. It was in this connection that the principal contest arose in regard to the admission of testimony. The court admitted the testimony showing the transaction in relation to the goods, and, as I think, properly.

In respect to the two parts of the transaction the defendant himself testified as follows : " We commenced inventorying the goods on the 12th or 15th day of January, 1866, and finished on the 17th of January. I paid up for the goods at the time. In one or two days after I purchased the goods from Gage & Co. I bought the storehouse and lot (the property in contest) from Gage. The house and lot were Gage's individual property. I purchased the house and lot on the 17th of January, and purchased the goods before, but paid for them and closed the bargain on the 17th of January." Again he says : " The goods and fixtures inventoried at $8,000 ; the storehouse and lot was $3,500, all amounting to $11,500, and paid $10,500 ;" that is, $11,500 less the amount due Smith under the title bond. It is thus seen, from the defendant's own version of the affair, that the two transactions, or rather the two parts of one and the same transaction, were consummated at one and the same time. Under such circumstances an exclusion of the evidence in relation to the goods would be but a convenient mode of covering up fraud and suppressing the truth.

The petition avers that the house and lot were conveyed without consideration, and that is one of the issues in the case. It is clear that if anything was paid, the payment was made on the 17th of January, or within a day or two after. It was unquestionably competent for the plaintiff to show that the defendant had exhausted his resources in the purchase of the goods, so that he was without funds to apply on account of the purchase of the house and lot. In short, the two transactions were so blended in

time, place, parties, and circumstances that an inquiry into the good faith of one involved an examination of the other. It was also proper to show what preceded and followed the transaction, the relations of the parties prior and subsequent, and all the facts and circumstances surrounding the principal event.

But it is insisted that the court erred in permitting the sheriff's deed to the plaintiff to be read in evidence. This objection is based upon the assumption that it is not the same deed which is set out in the petition. The petition describes both the judgment and execution as being against Gage, whereas the deed describes the judgment and execution as being against Gage and two others. The petition is exact as far as it goes, but fails to state all the facts. There is no misdescription, but the description is not as full as it might have been; that is all. The judgment and execution were in fact against Gage, as the petition avers. His property alone was levied upon and sold, and it is alone his interest in that property which forms the subject of the present litigation. There was no material variation between the deed and the description of it contained in the petition. There was no misdescription of it at all.

It remains to consider the defendant's motion in arrest. It is urged that Smith, the obligor in the title bond, was a necessary party to the suit, and he was not joined. What has Smith to do with the subject-matter of this suit? The proceeding does not affect, and was not designed to affect, any right, title or interest of his. The object of the suit is to remove from the plaintiff's equitable title the cloud cast upon it by Gage's quit-claim; to divest the defendant of any interest in that title, and vest the same in the plaintiff. Smith has no interest in the controversy, and the omission of him as a party is no ground for arresting the judgment.

The petition is again objected to as radically defective because it fails to allege that Gage held Smith's bond at the time the quit-claim to the defendant was executed. The suggestion is made that, for aught that appears, Gage may have previously parted with the bond, and so with his interest in the land. The petition avers that the premises described in the bond were

conveyed by Gage to the defendant; that is, that the title was conveyed. That fact the answer fails to controvert. For the purposes of this suit, it therefore stands admitted by the pleadings. It is also admitted by the pleadings that Gage was in possession of the lot at the time of his conveyance to the defendant. Gage could not convey the lot, as alleged in the petition, unless he had some right, title or interest to convey and pass by his deed. If the defendant desired to controvert the fact that Gage passed an equitable title by his deed, he should have put the matter in issue by appropriate pleading. The answer was evidently drawn with reference to no such point. It avers that the defendant took the conveyance in good faith, and paid $3,500 for the right and interest thereby acquired. That is the effect of the averments. There is no suggestion of any want or defect of title in Gage, either in the pleadings or the proofs.

I see no occasion for reviewing the instructions. This is a chancery suit, and no sufficient ground appears for disturbing the judgment of the court below. It will therefore be affirmed. The other judges concur.